UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **HOLLYWOOD SERRA, LLC,** *et al.***,** )<br>)<br>**Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**PAMELA ABIDE,** *et al.***,** )<br>)<br>**Defendants.** ) | **Case No.: 2:24-cv-01286-AMM** |

## MEMORANDUM OPINION ON PLAINTIFFS' MOTION TO REMAND

This matter is before the court on the plaintiffs' motion to remand. Doc. 5. For the reasons explained below, the motion is **GRANTED** and this case is **REMANDED** to the Circuit Court of Jefferson County, Alabama. The pending motion to dismiss, Doc. 23, motion to stay, Doc. 25, and motion for ruling, Doc. 32, are **DENIED AS MOOT**.

### I.   BACKGROUND

This case involves a dispute regarding an investment relationship between plaintiffs Hollywood Serra, LLC, Serra Holdings, LLC, Kevin Serra, Chris Lane, and defendants Pamela Abide, New Orleans Equity Partners, LLC, Sharon Forman, Terra Robles, Benny Capps, and Sharp Investments GP. Doc. 5. The plaintiffs allege that "[t]he Defendants approached [them] about investing in an energy company named CETA." Doc. 1-1 ¶ 3. They allege that "[t]he owner of CETA is Roy Hill"

and that "Defendants told Plaintiffs that Mr. Hill was using investors['] money instead of borrowing from a bank because Mr. Hill 'got burned very bad in the 80's and hates banks and will not use banks under any circumstances.'" *Id*. ¶ 4. They allege that "[t]he Defendants told the Plaintiffs that there was a waiting list of investors" and that they "needed to act quickly." *Id*. ¶ 8. They further allege that "[n]one of the Defendants['] representations to the Plaintiffs were true" and "CETA was a ponzi scheme." *Id*. ¶ 10. They allege that "[t]he profits for getting investors to put money into CETA were run through Sharp Investments GP." *Id*. They allege that "[t]he Plaintiffs lost . . . $1,655,894.40 by investing in CETA based on the misrepresentations of the Defendants." *Id*. ¶ 11.

The plaintiffs filed state law claims of fraud, misrepresentation, negligence, breach of contract, and conspiracy against the defendants in the Circuit Court of Jefferson County, Alabama on August 12, 2024. *Id*. ¶¶ 12–21. The plaintiffs sought $1,655,894.40 in compensatory damages for each claim, along with punitive damages of $10 million for fraud, $5 million for misrepresentation, and $20 million for conspiracy and $20,000,000.00 in punitive damages. *Id*. at 13–15. The plaintiffs did not assert any claims under federal law. *See id*. The defendants timely removed the action to federal court. Doc. 1. The plaintiffs timely filed a motion to remand,

2

which is fully briefed. Docs. 5, 13, and 18.

On September 27, 2024, the defendants filed a motion to dismiss. Doc. 7. The plaintiffs filed an amended complaint, Doc. 15, and the defendants moved to dismiss the amended complaint, Doc. 23. The plaintiffs moved to stay any ruling on the defendants' motion to dismiss pending a ruling on the motion to remand. Doc. 25.

## II. LEGAL STANDARD

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A district court has original jurisdiction where both "the matter in controversy exceeds the sum or value of $75,000" and the parties are "citizens of different States." 28 U.S.C. § 1332(a). "A removing defendant bears the burden of proving proper federal jurisdiction," and "[a]ny doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court." *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008) (cleaned up).

## III. ANALYSIS

The plaintiffs argue that the case must be remanded because the parties are

nondiverse. *See* Doc. 5. Specifically, they argue that three of the five counts in their complaint are asserted against Sharp Investments, a "Jefferson County, Alabama general partnership." Doc. 5 ¶¶ 1, 3. The defendants agree that Sharp Investments is "a citizen of Alabama for purposes of diversity jurisdiction" because one of its general partners, Sam Capps, "is a citizen of Alabama." Doc. 1 ¶ 18. But they argue "Sharp Investments' citizenship should be disregarded for purposes of diversity jurisdiction because it was fraudulently joined." *Id*; *see also* Doc. 13 at 2.

"The burden of establishing fraudulent joinder is a heavy one." *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). "[T]he removing party has the burden of proving by clear and convincing evidence that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (cleaned up). The defendants argue fraudulent joinder of the first kind. Doc. 13 at 8.

As for the plaintiffs' fraud and misrepresentation claims, the defendants argue that "Plaintiffs have failed to plead the elements of fraud with particularity under Alabama Rule of Civil Procedure 9(b)." *Id*. at 10. They argue "[t]he only Defendants

4

whose actions could even possibly be attributed to Sharp Investments are Abide and Foreman, who are both general partners of Sharp Investments." *Id*. at 8. They argue that "Plaintiffs have not adequately pled that Abide's or Foreman's alleged statements constitute fraud or misrepresentation, much less that they can be attributed to Sharp Investments." *Id*. They argue that "[m]ost of the statements alleged in the Complaint and Serra's Affidavit are attributed vaguely to 'Defendants' or to multiple individuals without differentiation or specification." *Id*. at 10. They further argue that the complaint "does not indicate when any statements were made," "fails to indicate . . . where any communications took place," and does not "indicate[] what was false about any particular statement." *Id*. at 10–11. Finally, they argue that "Plaintiffs . . . cannot establish reasonable reliance, an essential element of their fraud and misrepresentation claims." *Id*. at 12. The plaintiffs argue that the first amended complaint, Doc. 15, sufficiently satisfies pleading requirements for each of their claims, *see* Doc. 18 ¶¶ 2–4. But they do not argue that their initial, state court complaint, Doc. 1-1, does the same. *See* Doc. 18.

Under controlling precedent, "in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff—be it the initial complaint or a later received paper—and determines whether that document and the

5

notice of removal unambiguously establish federal jurisdiction." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1213 (11th Cir. 2007). "In assessing whether removal was proper in such a case, the district court has before it only the limited universe of evidence available when the motion to remand is filed." *Id.* at 1213–14. This includes "the notice of removal and accompanying documents." *Id.* at 1214. "If that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings." *Id.* at 1214–15; *see also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 773 (11th Cir. 2010) (explaining "the jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time" (cleaned up)). As for fraudulent joinder, "[t]he determination . . . must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez*, 139 F.3d at 1380. "In addressing the issue . . . the district court should resolve all questions of fact and controlling law in favor of the plaintiff . . . ." *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989).

Here, the amended complaint came after the motion to remand. *See* Docs. 5,

15. Because the amended complaint contains allegations, not evidence, the court does not consider the amended complaint in its analysis of the motion to remand. As such, before the court is the plaintiffs' state court complaint, Doc. 1-1, the defendants' notice of removal, Doc. 1, Pamela Abide's declaration, Doc. 1-2, the plaintiffs' motion to remand, Doc. 5, Kevin Serra's affidavit and accompanying documents, Doc. 5-1, the response, Doc. 13, and the reply, Doc. 18.

In their state court complaint, the plaintiffs allege the following about all defendants, including Sharp Investments: (1) "[t]he Defendants approached the Plaintiffs about investing in an energy company named CETA"; (2) "Defendants told the Plaintiffs that Mr. Hill[, the owner of CETA,] was using investors['] money instead of borrowing from a bank because Mr. Hill 'got burned very bad in the 80's and hates banks and will not use banks under any circumstances'"; (3) "[t]he Defendants told Plaintiffs that 'the projects available for funding are funded in a day or less' and that 'these oil contracts are locked in for years'"; (4) "Defendants told the Plaintiffs that 'CETA had a patent called Ceta Solve with Exxon and other oil refineries"; (5) "[t]he Defendants told the Plaintiffs that there was a waiting list of investors but that he needed to act quickly so that 'they could get me in'"; (6) "[n]one of the Defendants['] representations to the Plaintiffs were true"; (7) "CETA was a

7

ponzi scheme"; (8) "[t]he profits for getting investors to put money into CETA were run through Sharp Investments GP"; (9) "[t]he Plaintiffs relied on the misrepresentations of the Defendants . . . to their great detriment"; (10) "[t]he Plaintiffs lost the sum of $1,655,894.40 by investing in CETA based on the misrepresentations of the Defendants"; (11) "[t]he Defendants were aware and/or became aware that CETA was a ponzi scheme"; (12) "[t]he Defendants continued to solicit additional 'investments' in CETA from the Plaintiffs even after they became aware that CETA was a ponzi scheme"; (13) "[t]he Plaintiffs lost the sum of $1,655,894.40 in the CETA ponzi scheme based on the Defendants['] intentional perversion of the truth in order to induce the Plaintiffs to rely on said misrepresentations so that they would invest $1,655,894,40 in the ponzi scheme"; (14) "[t]he Defendants, either intentionally or innocently, made numerous assertions about CETA which were untrue"; (15) "[t]he misrepresentations of the Defendants led the Plaintiffs to make apprehensions of the financial condition of CETA which were untrue"; (16) "[a]s a result of the misrepresentations of the Defendants, the Plaintiffs lost the sum of $1,655,894.40"; (17) "[b]ut for the misrepresentations of the Defendants, the Plaintiffs would never have invested in CETA"; (18) the defendants "formed a confederation to defraud the Plaintiffs out of $1,655,894.40

based in part on their misrepresentations that CETA was a good investment and a legitimate company and that they had part ownership in the company and that the company had a patent with Exxon"; (19) "[t]he Defendants conspired to defraud the Plaintiffs out of funds to keep the ponzi scheme going as long as possible as they themselves were benefitting from the ponzi scheme"; (20) "[i]f they did not attract new investors, then no more payments would be made to the old investors inclusive of themselves"; and (21) "[t]he Defendants were also obtaining large commissions off of the investments [they] got the Plaintiffs to make in the ponzi scheme." Doc. 1-1 ¶¶ 3–4, 6–8, 10–15, 20.

In a notarized affidavit, plaintiff Kevin Serra testifies that he "was approached in both [February] 2022 and [April] 2023 by Pamela Abide and Sharon Forman on behalf of Sharp Investments, GP to invest in 'CETA.'" Doc. 5-1 at 1. He testifies that he and his "entities lost approximately $1,000,000.00 investing in CETA before [he] became aware it was a ponzi scheme and its only revenue source was 'investor funds.'" *Id*. He testifies that "[e]very time [he] was contacted and solicited to 'invest' in CETA, [he] was located in Jefferson County, Alabama." *Id*. He further testifies that "[r]ewards for getting myself and my entities to invest in CETA and keep the ponzi scheme going were funneled to Pamela Abide and Sharon Forman through

9

Sharp Investments GP." *Id.* He also testifies that "Sharp Investments, GP was part of the conspiracy to continue to get me to invest in CETA and to funnel the rewards to those who were successful in getting me to put more money into CETA." *Id.* Finally, he testifies that "Ms. Abide of Sharp Investments, GP posted on her Facebook page the photos from her vacation to Italy that she took with proceeds that she 'earned' from getting other to invest in the ponzi scheme." *Id.*

Under Alabama law, "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Ala. R. Civ. P. 9(b). Fraud and misrepresentation claims must contain the following elements: "(1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence." *McCutchen Co., Inc. v. Media Gen., Inc.*, 988 So. 2d 998, 1001 (Ala. 2008) (cleaned up); *see also Bryant Bank v. Talmage Kirkland & Co., Inc.*, 155 So. 3d 231, 238 (Ala. 2014) (reciting the same elements for misrepresentation claims). "The pleading must show the time, the place, and the contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained." *Phillips Colls. of Ala., Inc. v. Lester*, 622 So. 2d 308, 311 (Ala. 1993)

10

(cleaned up).

Here, the plaintiffs allege that "[t]he acts complained of occurred primarily in Jefferson County, Alabama," Doc. 1-1 ¶ 2, and Mr. Serra alleges that he was solicited by members of Sharp Investments in "February of 2022" and "April of 2023," Doc. 5-1 at 1. These statements satisfy the time and place pleading requirements. The complaint further alleges that "[n]one of the Defendants['] representations to the Plaintiffs were true" and "CETA was a ponzi scheme," not an energy company as Mr. Serra was led to believe, that was "run through Sharp Investments GP." Doc. 1-1 ¶ 10; Doc. 5-1 at 1. Additionally, the complaint alleges that "[t]he Defendants continued to solicit additional 'investments' in CETA from the Plaintiffs even after they became aware that CETA was a ponzi scheme." Doc. 1-1 ¶ 12. These statements suffice to assert the substance of the false representations and the facts allegedly misrepresented. Moreover, the complaint alleges that the plaintiffs suffered $1,655,894.40 in losses, Doc. 1-1 ¶ 13, and Mr. Serra states that he and his "entities lost approximately $1,000,000.00," Doc. 5-1 at 1. These allegations serve as identification of what allegedly has been obtained. Finally, the complaint alleges that "[b]ut for the misrepresentations of the Defendants, the Plaintiffs would never have invested in CETA," which asserts reliance. Doc. 1-1 ¶

15. Based on these allegations, the court finds that the plaintiffs sufficiently pleaded claims for fraud and misrepresentation such that "there is [a] possibility [they] can establish a cause of action against" Sharp Investments. *See Pacheco de Perez*, 139 F.3d at 1380.

As for the plaintiffs' conspiracy claim, the defendants argue that no facts have been alleged "showing Defendants had meetings or discussions to form a plan to defraud Plaintiffs or that Defendants otherwise acted in concert to defraud Plaintiffs." Doc. 13 at 14. They further argue that "the Complaint fails to allege facts showing Sharp Investments acted with actual knowledge and intent to defraud Plaintiffs." *Id*. The plaintiffs argue that they have sufficiently stated a claim for conspiracy against Sharp Investments. *See* Doc. 5 ¶ 3. They argue that "Sharp Investments, GP was the vehicle for the defendants to receive and conceal their 'profits/rewards' for deceiving others into investing in the ponzi scheme." *Id*.

The defendants' arguments about conspiracy fail for similar reasons why their arguments for fraud and misrepresentation failed. Under Alabama law, the elements of civil conspiracy are: "(1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by unlawful means." *Ex parte Alamo Title Co.*, 128 So. 3d 700, 713 (Ala. 2013). "Conspiracy is not an independent cause of

action; therefore, when alleging conspiracy, a plaintiff must have a viable underlying cause of action." *Drill Parts & Serv. Co., Inc. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1290 (Ala. 1993). The court already has found that the plaintiffs' complaint sufficiently pleads a claim for fraud and misrepresentation. *See supra* at 11–12. As such, the plaintiffs have a "viable underlying cause of action." *Drill Parts & Serv. Co., Inc.*, 619 So. 2d at 1290. Moreover, they allege that Sharp Investments along with the other defendants "formed a confederation to defraud the Plaintiffs out of $1,655,894.40 based in part on their misrepresentations that CETA was a good investment and a legitimate company." Doc. 1-1 ¶ 20. Mr. Serra states that "Sharp Investments, GP was part of the conspiracy to continue to get [him] to invest in CETA and to funnel the rewards to those who were successful in getting [him] to put more money into CETA." Doc. 5-1 at 1. The plaintiffs also allege that "[t]he Defendants conspired to defraud the Plaintiffs out of funds to keep the ponzi scheme going as long as possible as they themselves were benefitting from the ponzi scheme." Doc. 1-1 ¶ 20. They argue that "Sharp Investments, GP was the vehicle for the defendants to receive and conceal their 'profits/rewards' for deceiving others into investing in the ponzi scheme." Doc. 5 ¶ 3. Based on these allegations, the court finds that the plaintiffs sufficiently pleaded a claim for conspiracy such that "there

is [a] possibility [they] can establish a cause of action against" Sharp Investments. *See Pacheco de Perez*, 139 F.3d at 1380.

The defendants provided a declaration from Pamela Abide in which she states that "Sharp has never actively engaged in business of any kind," "the Partners used Sharp exclusively as a means to invest in [CETA]," "[n]o other individuals ever interacted with Sharp," "[n]o other individuals ever used Sharp as a means to invest in CETA," "[a]ny communications the Partners had with other CETA investors had no connection to Sharp," and "[t]he Partners never solicited other CETA investors on behalf of Sharp." Doc. 1-2 ¶¶ 5–8, 10–11. She further states that she is "personally aware that Mr. Lane began investing in CETA in 2020, prior to the time Sharp was formed," and Mr. "Serra first contacted [her] about [her] experience investing in CETA on May 24, 2021, prior to the time Sharp was formed." *Id.* ¶¶ 13–14.

The court finds multiple inconsistencies between Ms. Abide's declaration and Mr. Serra's affidavit. Accordingly, the declarations raise questions of fact. But raising questions of fact is insufficient to establish fraudulent joinder. Under controlling precedent, the court must "resolve all questions of fact and controlling law in favor of the plaintiff." *Cabalceta*, 883 F.2d at 1561. Accordingly, the court finds the evidence insufficient to establish that "there is no possibility the plaintiff[s]

14

can establish a cause of action against [Sharp Investments]." *See Pacheco de Perez*, 139 F.3d at 1380. Accordingly, the existence of Sharp Investments as a defendant ruins diversity and divests this court of jurisdiction under 28 U.S.C § 1332(a).

## IV.   CONCLUSION

For the foregoing reasons, the plaintiffs' motion to remand, Doc. 5, is **GRANTED** and this case is **REMANDED** to the Circuit Court of Jefferson County, Alabama. The defendants' motion to dismiss, Doc. 23, the plaintiffs' motion to stay, Doc. 25, and the plaintiffs' motion for ruling, Doc. 32, are **DENIED AS MOOT**. The Clerk of the Court is **DIRECTED** to close this case.

**DONE** and **ORDERED** this 20th day of June, 2025.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE